Receipt Number

537369

25

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

AMERICAN BLIND AND WALLPAPER
FACTORY, INC., d/b/a
DECORATETODAY.COM, INC., a Delaware
corporation,

                    Plaintiff,

v.

AMERICAN SHUTTER COMPANY,

                    Defendant.

Case: 2:06-cv-10279
Assigned To : Edmunds, Nancy G
Referral Judge: Scheer, Donald A
Assign. Date : 01/20/2006 @ 3:27 p.m.
Description: cmp american blind and
wallpaper factory, inc. v
american shutter co. (tam)

JURY TRIAL DEMANDED

KENN BROTMAN
CAROLINE PLATER
KELLEY DRYE & WARREN LLP
Attorneys for Plaintiff
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070

## COMPLAINT

Plaintiff, American Blind and Wallpaper Factory, Inc., d/b/a decoratetoday.com, Inc.

("American Blind"), by and through its counsel, Kelley Drye & Warren LLP and for its

complaint against American Shutter Company ("ASC") states as follows:

### Nature of Case

1.    American Blind brings this action to redress the deliberate and unauthorized

conduct and business practices of ASC whereby ASC has infringed and diluted American

Blind's registered service marks and trademarks, "American Blind and Wallpaper Factory" and

"American Blind & Wallpaper."

2.      Since 1997, American Blind has continuously operated a distinctive Internet website located, among other places, at www.americanblinds.com, through which the company sells blinds, window treatments, wall coverings and other home decorating products and related services. American Blind has been very successful in its use of the Internet as an effective marketing channel and revenue generator. A large part of American Blind's success in repeat and referral business is attributed to the company's website content.

3.      Internet customers who are searching for a specific company product or information, but who do not know the domain name or website address at which it may be found, may use "keywords" and/or "search engines" to locate websites which match the keywords sought by the customer. Keywords are the textual terms that a consumer enters to locate the desired website or domain name. A search engine checks the keywords against its databases and produces a search result page, which lists the websites, in order of decreasing relevance with the most relevant websites listed first, that match the customer's keyword search.

4.      Many search engines enable advertisers to purchase or bid on keywords that guarantee placement/position on search result pages (i.e. American Blind may bid on the keyword "wallpaper" on the AOL search engine so that American Blind's website will be listed in the first position when a customer searches for the keyword "wallpaper" to find websites that sell wallpaper). This practice is referred to as a "pay-for-placement."

5.      ASC purchased the keywords "American blinds" on a search engine, Google, so that when a customer enters the keywords "American blinds" to find American Blind and Wallpaper Factory's website, ASC's website appears and is listed in the "Sponsored Links" section of the search results. (True and accurate copies of pay for placement displays for ASC's website as viewed through a web browser are attached hereto as Exhibit A).

6.    "American Blind and Wallpaper Factory" and "American Blind & Wallpaper" are registered trademarks with the United States Trademark Office owned by American Blind, which American Blind holds the exclusive rights to use.

7.    American Blind has protectable rights in its trade name "American Blinds," which has been associated by the public with American Blind's goods and services for several years. In addition, American Blind has sought registration of the mark "American Blinds" with the United States Trademark Office and such mark was recently approved for registration, and will register in due course. American Blind, consequently, has exclusive rights to the use of such mark.

8.    Moreover, American Blind has been vigilant in defending its marks from infringement and dilution. As an example, American Blind was awarded a permanent injunction in the matter of *Decoratetoday.com, Inc. v. American Blind & Accessory Co., Inc. and Directory One, Inc.*, Case No. 01-CV-70804-DT, by the United States District Court for the Eastern District of Michigan, permanently enjoining the defendants from using American Blind's "trademarks, service marks or the word 'American' in any variation or combination with the word 'Blind' either singular or plural...."

9.    ASC seeks to exploit the hard-earned popularity and success of American Blind. In an attempt to illegally capitalize on American Blind's trademarks, ASC, purchased the keywords "American blinds" for purposes of its Internet search engine driven advertising.

10.    As a result, ASC's website was listed and currently is listed on Google as a match for searches using the terms "American blinds" and appears as a Sponsored Link. *See* Exhibit A, copy of pay-for-placement display for ASC's website as viewed through a web browser.

11.   Thus, consumers searching for American Blind's website on the Internet via search engines or websites where ASC purchased the keywords "American blinds" have been led to ASC's website instead of American Blind's website.

12.   ASC's current use of American Blind's Marks in the terms "American blinds" to lead customers to its website creates a likelihood of customer confusion.

13.   These deliberate acts constitute common law unfair competition, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), and dilution of American Blind's "famous" marks in violation Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

14.   In addition to harming American Blind's reputation and the value of its marks, ASC has realized and continues to realize profits and other benefits rightfully belonging to American Blind.

15.   Upon being notified of its illegal conduct, ASC did not respond to American Blind's requests to cease and desist.

16.   ASC has ignored American Blind's demands to cease all unauthorized use of American Blind's trademarks and/or words confusingly similar thereto in its keyword Internet advertising, instruct all Internet search engines to discontinue any sponsorship for ASC that utilize American Blind's Marks and terminate all advertising using American Blind's trademark and marks similar thereto.

17.   ASC's failure to comply with American Blind's demands manifests its intent to continue to wrongfully compete with, infringe upon and dilute American Blind's proprietary rights in its registered marks.   American Blind seeks an injunction to halt ASC's wrongful

conduct and award of damages as well as attorneys' fees and expenses for ASC's willful and wanton conduct.

## Parties

18.     American Blind is a Delaware corporation with its principal place of business at 909 North Sheldon Road, Plymouth, Michigan.

19.     ASC is, upon information and belief, a Texas corporation with a principal place of business in Houston, Texas.

20.     ASC  is subject to the personal jurisdiction of this Court because it transacts business in the state of Michigan through the operation of their Internet website consisting of a "virtual store" and have committed tortious acts in the State of Michigan.

## Jurisdiction and Venue

21.     This is an action arising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c).  This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b).

22.     The Court has subject matter jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367(a).

23.     Consistent with due process and the Michigan long-arm statute, M.C.L.A. § 600.715, this Court may also exercise *in personam* jurisdiction over ASC because of its purposeful conduct directed toward the State of Michigan and the injury inflicted therein. Specifically, through its use of American Blind's trademark in course of advertising the ASC website on certain Internet search engines, ASC is deemed to have purposefully availed itself of the privilege of transacting business in the State of Michigan.

24.     Not only has ASC regularly solicited business through acts directed toward consumers in Michigan, but the injury suffered by American Blind, a company headquartered in Michigan, is deemed to have occurred in and is substantially connected to the State of Michigan. As such, *in personam* jurisdiction over ASC is proper. *See, e.g., Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 812-813 (E.D. Mich. 2000) (citations omitted).

25.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to the claims occurred in this district and American Blind is a resident of this district.

### Facts Common to All Claims

26.     American Blind hereby restates and incorporates by reference paragraphs 1-25 above, as though fully set forth herein.

27.     Since 1986, American Blind has been using and promoting its corporate name – "American Blind and Wallpaper Factory" -- in the home decorating business. American Blind offers a variety of products for sale, including blinds, window treatments, wall coverings and other home decorating products and related services.

28.     American Blind is recognized and well known in the home decorating industry and to consumers nationwide as "American Blind".

29.     American Blind is the owner of and has the exclusive rights to use the following trademarks registered with the United States Patent and Trademark Office:

| Mark | Reg. Number | Reg. Date |
|------|-------------|-----------|
| AMERICAN BLIND & WALLPAPER FACTORY | 2,022,925 | 12/17/96 |
| AMERICAN BLIND FACTORY | 1,463,548 | 11/3/87 |

(True and accurate copies of proof of these registrations are attached hereto as Exhibit B.).

30.     Additionally, American Blind has protectable rights in its trade name "American Blinds". American Blind has sought registration of the mark AMERICAN BLINDS with the United States Trademark Office and such mark was recently approved for registration and will register in due course.

31.     The foregoing service marks and trademarks are hereinafter collectively referred to as the "American Blind Marks".

32.     American Blind is the largest direct to customer retailer of window treatments and wall coverings in the United States and on the Internet. American Blind, through its predecessor companies, has been in the home decorating business for over a half century.

33.     American Blind sells and promotes its home decorating products and related services to nearly seven million customers across the United States through its toll-free telephone numbers and its website. American Blind processes over 400,000 transactions per year over the internet, eighty percent of which are from repeat and referral business.

34.     American Blind spends millions of dollars each year advertising its brand, including advertising in over forty national magazines, on every major search engine, on national television and radio and through millions of direct mailings and catalogs distributed throughout the United States. American Blind has historically spent in excess of $50,000,000 promoting its name and image, developing its reputation and goodwill, and policing and protecting its name, website, and the American Blind Marks.

35.     As a result of long and continuous use by American Blind in connection with the sale of blinds, window treatments, wall coverings and other home decorating products and related services and extensive marketing, advertising, and sales by American Blind throughout the United States, the American Blind Marks have become "famous" and distinctive.

36.     Moreover, the term "American" along with the terms "blinds" and/or "wallpaper" have gained a secondary meaning such that the combination of these terms serves to identify American Blind and its products and services in the minds of consumers.

37.     Since 1997, American Blind has extensively utilized the Internet as a marketing channel for its home decorating business, including the sale of blinds, window treatments, wall coverings and other home decorating products and related services.  American Blind has spent in excess of $10,000,000 developing its Internet presence since 1997.

38.     ASC offers its products for sale to Internet users in the United States.  ASC sold its products to consumers in the State of Michigan.

39.     Upon information and belief, ASC has purchased the keywords "American blinds" on certain Internet search engines, including but not limited to, Google.

40.     By purchasing keywords from an Internet search engine, ASC ensured that its website, americanwholesaleblinds.com, will appear at or near the top of the results page and as a Sponsored Link for searches wherein the keywords "American blinds" is entered.  *See* Exhibit A.

41.     In or about December 2005, American Blind became aware of ASC's unauthorized use of the American Blind Marks in their Internet search engine driven advertising.

42.     On December 16, 2005, American Blind, through its attorneys, issued a letter to ASC, demanding that ASC immediately cease and desist from using American Blind's trademarks in its Internet website advertising.  (A true and correct copy of this letter is attached hereto as Exhibit C.)

43.     ASC continues to create consumer confusion and improperly use and dilute American Blind's trademarked names by purchasing the keywords "American blinds" and has failed to proffer any good faith basis for its actions.

44.     ASC's failure to comply with American Blind's demands manifests its intention not to comply with American Blind's requests and its intention to continue its illegal conduct.

## COUNT I

### (Common Law Unfair Competition)

45.     American Blind hereby restates and incorporates by reference Paragraphs 1 through 44 above, as though fully set forth herein.

46.     The American Blind Marks were famous and distinctive at the time of ASC's use and purchase of use of the marks and/or terms confusingly similar thereto as keywords.

47.     American Blind and ASC are both in the home decorating business, offering substantially similar products for sale, including blinds, shades and other home decorating products and related services.

48.     The keywords purchased by ASC, "American blinds," are confusingly similar to the American Blind Marks by incorporating at least two of the words used in the American Blind Marks.

49.     When customers using the Internet and a search engine do not know the exact website address for a product they are looking for, they often use terms in the name of the product to locate that products website.

50.     By using the American Blind Marks and/or terms confusingly similar thereto as its keywords, ASC has caused a likelihood of consumer confusion.

51.     Consumer confusion is compounded by the fact that American Blind and ASC use the same marketing channels by primarily focusing on consumer contact via the Internet.

52.     ASC has purchased a sponsored link listing for the use of the keywords "American blinds" on certain Internet search engines, including Google. As a result, ASC's

website appears at or near the top of the list of search results when these keywords are searched by a customer.

53.     By purchasing these keywords, ASC has manipulated customers' searches for American Blind's website, so that customers will be diverted from American Blind's website and, instead, purchase from ASC the same goods sought from American Blind.

54.     ASC's actions manifest and continue to manifest a bad faith intent to profit from the American Blind Marks by diverting and confusing customers who attempt to locate and access American Blind's goods and services through the Internet.

55.     ASC's acts constitute unfair competition with American Blind.

56.     The aforementioned conduct of ASC is intentional, malicious and wanton in that ASC specifically purchased, used and continues to use American Blind's registered Marks and/or terms confusingly similar thereto, as keywords for Internet search engine generated searches to locate ASC's website: (a) with full knowledge that American Blind owns and had the exclusive right to use the American Blind Marks, (b) with the intention of profiting from the American Blind Marks, (c) with the intention of eliminating competition from American Blind, and (d) after notice from American Blind to cease their unfair competition.

57.     As a result of ASC's aforementioned conduct, American Blind has suffered and continues to suffer substantial losses of revenue and irreparable harm, unless said conduct is enjoined by this Court.

## COUNT II

### (Federal Trademark Infringement)

58.     American Blind hereby restates and incorporates by reference paragraphs 1 through 57 above as though fully set forth herein.

59.     Without authorization from American Blind, ASC has used the American Blind Marks and/or confusingly similar terms to indirectly sell, offer to sell and advertise window blinds and other window treatments and related services through ASC's Internet website.

60.     ASC's use of the American Blind Marks and/or terms confusingly similar thereto as search terms to direct consumers to ASC's Internet website, to indirectly sell, offer to sell and advertise window blinds and other window treatments and related services, has caused and is likely to continue to cause consumer confusion, mistake and deception as to the affiliation, connection, or association of ASC with American Blind, and as to the origin, sponsorship, or approval of ASC's goods and services by American Blind.

61.     ASC's unauthorized acts constitute direct infringements of American Blind's rights in the American Blind Marks in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a).

62.     The aforementioned conduct of ASC is intentional, malicious and wanton in that ASC infringed and continues to infringe on the American Blind Marks: (a) with full knowledge that American Blind owns and has the exclusive right to use the American Blind Marks, (b) with the intention of causing a likelihood of confusion and mistake and to deceive, (c) with the intention of eliminating competition from American Blind, and (d) after notice from American Blind to cease their infringing activities.

63.     As a result of ASC's aforementioned conduct, American Blind has suffered, and continues to suffer, substantial losses of revenue and irreparable harm, unless said conduct is enjoined by this Court.

## COUNT III

**(Federal Trademark Infringement, False Designation of Origin, and Unfair Competition)**

64.     American Blind hereby restates and incorporates by reference paragraphs 1 through 57 above, as though fully set forth herein.

65.     Notwithstanding American Blind's well known prior use and prior statutory and common-law rights in the American Blind Marks, ASC has used and continues to use in connection with pay-for-placements on the Internet, substantially identical marks and/or terms confusingly similar to those owed by American Blind, namely, "American blinds".

66.     ASC's use of these keywords has always been without American Blind's consent.

67.     Consequently, in the past, ASC's website appeared as a "sponsored link" for the keywords "American blinds" on certain Internet search engine sites, including but not limited to Google. *See* Exhibit A.

68.     Currently, ASC's website is listed at or near the top of the search result lists on Google as a match for searches using the keywords "American blinds". *See* Exhibit A.

69.     ASC's use of the American Blind Marks and/or terms confusingly similar thereto as keywords for Internet advertising to indirectly sell, offer to sell and advertise window blinds and other window treatments and related services through ASC's Internet website has caused and is likely to cause consumer confusion, mistake and deception as to the affiliation, connection, or association of ASC with American Blind, and as to the origin, sponsorship, or approval of ASC's goods and services by American Blind, when in fact ASC has no connection whatsoever with American Blind in regard to such website.

70.     ASC's unauthorized acts constitute infringements of American Blind's rights in the American Blind Marks, false advertising, false representation, and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

71.     The aforementioned conduct of ASC is intentional, malicious and wanton in that ASC has infringed and continues to infringe on the American Blind Marks: (a) with full knowledge that American Blind owns and has the exclusive right to use the American Blind Marks, (b) with the intention of causing a likelihood of confusion and mistake and to deceive, (c) with the intention of eliminating competition from American Blind, and (d) after notice from American Blind to cease their infringing activities.

72.     As a result of ASC's aforementioned conduct, American Blind has suffered, and continues to suffer, substantial losses of revenue and irreparable harm, unless said conduct is enjoined by this Court.

## COUNT IV

### (Federal Trademark Dilution)

73.     American Blind hereby restates and incorporates by reference paragraphs 1 through 57 above, as though fully set forth herein.

74.     ASC's use of American Blind's Marks and/or terms confusingly similar thereto, in connection with their pay-for-placement Internet advertising on certain Internet search engine sites, including but not limited to Google, has caused and continues to cause dilution of the distinctive quality of the "famous" American Blind Marks.

75.     ASC's acts constitute dilution of the American Blind Marks in violation of 15 U.S.C. § 1125(c).

76.     The aforementioned conduct of ASC is intentional, malicious and wanton in that ASC's use of the American Blind Marks and/or terms confusingly similar thereto as keywords for Internet advertising to indirectly sell, offer to sell and advertise window blinds and other window treatments and related services through ASC's Internet website: (a) with full knowledge

that American Blind owned and had exclusive rights to use the American Blind Marks, (b) with the intention of diluting the distinctive quality of the American Blind Marks, (c) with the intention of eliminating competition from American Blind, and (d) after notice from American Blind to cease their diluting activities.

77.     As a result of ASC's aforementioned conduct, American Blind has suffered, and continues to suffer, substantial losses of revenue and irreparable harm, unless said conduct is enjoined by this Court.

### Prayer for Relief

WHEREFORE, as to all Counts of this Complaint, ASC will continue its unlawful activities unless enjoined and American Blind's remedy at law is inadequate; and

WHEREFORE, as to all Counts of this Complaint, American Blind requests:

(A)     Injunctive relief in the form of an order prohibiting ASC and its officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with it from:

(i)     directly or indirectly selling, offering for sale, distributing, or advertising window blinds or other goods or services related to window treatments by use of the American Blind Marks and/or terms confusingly similar thereto in their paid Internet advertising through Internet search engines, which is likely to cause consumer confusion, mistake, or deception with respect to the American Blind Marks; and

(ii)     directly or indirectly selling, offering for sale, distributing, or advertising window blinds or other goods or services related to window treatments by use of "American blinds" or any other substantially identical terms to the

American Blind Marks in their paid Internet advertising through Internet

search engines which is likely to cause consumer confusion, mistake, or

deception with or with respect to the American Blind Marks;

(B)     Injunctive relief in the form of an order requiring ASC to immediately contact all

Internet search engines and terminate all advertising using American Blind's Marks and/or terms

confusingly similar thereto as keywords for locating ASC's website;

(C)     That ASC and its officers, partners, agents, servants, employees, subsidiaries and

related companies or entities, and all others acting in concert or participating with it, be

permanently enjoined from:

(i)      further use of the American Blind Marks and/or terms confusingly similar

thereto; and

(ii)     engaging in any other act constituting unfair competition or deceptive

practices with American Blind or constituting an infringement of

American Blind's rights in and to the American Blind Marks; and

(D)     That ASC be required to reimburse American Blind for all actual damages and

lost sales suffered by American Blind by reason of ASC's illegal conduct, as well as any profits

of ASC that are attributable to ASC's unfair competition, dilution and infringement not taken

into account in computing the actual damages, and that punitive damages be awarded as

authorized under the law;

(E)     That ASC be required to pay all of American Blind's attorneys' fees, expenses

and costs associated with this action pursuant to the Lanham Act, 15 U.S.C. §1117; and

(F)     That this Court grants such other and further relief as this Court may deem just

and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims and on all issues triable by a jury.

Dated: January 19, 2006

Respectfully submitted,

KENN BROTMAN
CAROLINE PLATER
KELLEY DRYE & WARREN LLP
333 W. Wacker Dr.
Suite 2600
Chicago, IL 60606
(312) 857-7070

ATTORNEYS FOR PLAINTIFF
**AMERICAN BLIND AND
WALLPAPER FACTORY, INC.**

KELLEY DRYE & WARREN LLP





EXHIBIT

A

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 2,022,925

Registered Dec. 17, 1996

## SERVICE MARK
### PRINCIPAL REGISTER



COLOR TILE, INC. (DELAWARE CORPORA-
TION)
515 HOUSTON STREET
FORT WORTH, TX 76102

FOR: RETAIL MAIL ORDER SERVICES IN
THE FIELD OF WALL AND WINDOW COV-
ERINGS, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 5-0-1986; IN COMMERCE
5-0-1986.

OWNER OF U.S. REG. NO. 1,463,548.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "BLIND & WALLPAPER FAC-
TORY", APART FROM THE MARK AS
SHOWN.

THE LINING SHOWN IN THE DRAWING IS
A FEATURE OF THE MARK AND NOT IN-
TENDED TO INDICATE COLOR.

SER. NO. 74-636,528, FILED 2-21-1995.

MICHELLE MOONEY RITCHY, EXAMINING
ATTORNEY



EXHIBIT

B

Int. Cl.: 20

Prior U.S. Cl.: 32

## United States Patent and Trademark Office

Reg. No. 1,463,548
Registered Nov. 3, 1987

### TRADEMARK
### PRINCIPAL REGISTER



AMERICAN BLIND FACTORY, INC. (MICHI-
GAN CORPORATION)
SUITE 750
3000 TOWN CENTER
SOUTHFIELD, MI 48075

FOR: WINDOW BLINDS, IN CLASS 20 (U.S.
CL. 32).
FIRST USE 4-10-1986; IN COMMERCE
4-10-1986.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "BLIND FACTORY", APART
FROM THE MARK AS SHOWN.
THE LINING IN THE DRAWING DOES NOT
REPRESENT COLOR.

SER. NO. 651,046, FILED 3-23-1987.

JACQUELINE W. ABRAMS, EXAMINING AT-
TORNEY

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE
### SUITE 2600
### CHICAGO, ILLINOIS 60606

——

(312) 857 7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

——

BRUSSELS, BELGIUM

——

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

SUSAN J GREENSPON

DIRECT LINE: (312) 857-7980

EMAIL: sgreenspon@kelleydrye.com

December 16, 2005

**VIA FACSIMILE 281-441-7020**
**VIA EMAIL SUPERINTEL69@HOTMAIL.COM**
**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Lee Spilman
American Shutter Company
15120 Lee Road, Suite 614
Houston, TX 77396

Re:   Unauthorized Use of American Blind and Wallpaper Factory, Inc.'s Trademarks

Dear Mr. Spilman:

We are counsel to American Blind and Wallpaper Factory, Inc. d/b/a/ decoratetoday.com, Inc.("ABWF") and have been instructed to contact you concerning your company's business practices that, if true, constitute violations of state and federal law. Your company has engaged, and continues to engage, in conduct that, as described below, infringes upon ABWF's trademarks and has harmed ABWF's business interests and reputation. For the reasons stated below, we demand that you cease these activities immediately.

Our investigation has revealed that your company, American Shutter Company owns and/or controls an Internet website found at the URL www.americanwholesaleblinds.com that is confusingly similar to ABWF's trademark, "American Blinds," which infringes and dilutes ABWF's trademark. See attached copy of screen shot from Google search engine set forth in Exhibit A. As you can see, inputting the term "american blinds" on Google produced a listing for your website in the Sponsored Links section of Google in contravention of ABWF's rights to such term.

ABWF has protectable rights in its trade name "American Blinds" which has been associated by the public with ABWF's goods and services for several years. In addition, ABWF has sought registration of such mark with the United States Trademark Office and such mark was

CH01/CARTS/203845.1

**EXHIBIT**

_C_

KELLEY DRYE & WARREN LLP

Lee Spilman
American Shutter Company
December 16, 2005
Page 2

recently approved for, and will register in due course. ABWF, consequently, has exclusive rights to the use of such mark.

Moreover, ABWF has been vigilant in defending its marks from infringement and dilution. As an example, ABWF was awarded in the matter of *Decoratetoday.com, Inc. v. American Blind & Accessory Co., Inc. and Directory One, Inc.*, Case No. 01-CV-70804-DT, a permanent injunction by the United States District Court for the Eastern District of Michigan, permanently enjoining the defendants from using ABWF's "trademarks, service marks <u>or the word 'American' in any variation or combination with the word 'Blind' either singular or plural</u>...." We would be glad to send you a copy of the Permanent Injunction Order if you would like to read it in its entirety. Please note that ABWF was successful in defending not only its registered marks, but marks that were confusingly similar thereto. Consequently based upon federal law and precedent, your use of "American Wholesale Blinds" is confusingly similar to ABWF's mark, "American Blinds" and, as such, constitutes infringement and unfair competition.

You are unfairly competing with, infringing upon and diluting ABWF's trademarks through your unauthorized use of "American Wholesale Blinds" (<u>which is the word "American" in combination with the word "Blind(s)"</u>) for your website which advertises products and services in direct competition with ABWF. One effect of your conduct is that consumers using the Internet to find authorized ABWF products will be confused and/or deceived into visiting the americanwholesaleblinds.com website. This practice is illegal and clearly violates state and federal law. Indeed, the federal Lanham Act and various state statutes prohibit such infringing and diluting use of ABWF's trademark. Additionally, you are attracting Internet users by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of your website, its products or its services and ABWF.

Specifically, your unauthorized use of ABWF's marks constitutes federal trademark infringement, federal trademark dilution, as well as violations of state statutes governing trademarks. We believe that federal and state law provide immediate relief, in the event legal action should prove necessary. Furthermore, under both federal and state law, if ABWF prevails in this case—as it has in other cases against companies that have illegally used ABWF's trademarks—ABWF would be entitled to, and intends to seek, an award of compensatory damages, as well as attorneys' fees and court costs.

Accordingly, we ask that you immediately: (1) transfer the domain name "americanwallpaper.com" to ABWF; (2) terminate all advertising using ABWF's trademarks or any designation similar thereto in your metatags, domain names and search engine keywords;

CH01/CARTS/203845.1

**KELLEY DRYE & WARREN** LLP

Lee Spilman
American Shutter Company
December 16, 2005
Page 3

and (3) cease all use of ABWF's trademarks or marks confusingly similar thereto such as the following:

(a)    American Blind(s) and Wallpaper(s) Factory;

(b)    American Blind(s) and Wallpaper(s) Factories;

(c)    American Blind(s);

(d)    American Blind(s), Wallpaper(s) & More;

(e)    American Blind(s) Factory;

(f)    American Blind(s) Factories;

(g)    American Wallpaper(s) Factory;

(h)    American Wallpaper(s) Factories;

(i)    American Blind(s) and Wallpaper(s);

(j)    American Wallpaper(s); and

(k)    Decoratetoday or Decorate(s) Today

It is our sincere hope that you will cooperate with ABWF and take immediate steps to terminate these harmful practices that have been brought to your attention.   Given the seriousness of the matter to ABWF, we ask that you let us know your intentions by close of business on Monday, December 19, 2005.

Thank you in advance for your prompt attention to this matter.

Sincerely,

Susan J. Greenspon

SJG/sec

cc:    Steve Katzman (via email)

CH01/CARTS/203845.1

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET
County in which this action arose ___Wayne___

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
American Blind and Wallpaper Factory, Inc.

**DEFENDANTS**
American Shutter Company

**(b)** County of Residence of First Listed Plaintiff ___Wayne___
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ___Fort Bend County___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kenn Brotman, Kelley Drye & Warren LLP
333 W. Wacker Drive, Ste. 2600
Chicago, Il. 60606

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Select One Box Only)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Select One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☑ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Determination Under |
| | Employment | ☐ 550 Civil Rights | | | Access to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Select One Box Only)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sections 1331, 1338 (a) & (b)

Brief description of cause:
Trademark Infringement, Lanham Act and Michigan Unfair competition

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
January 19, 2006

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?                          ☐ Yes
                                                                                      ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other      ☐ Yes
          court, including state court? (Companion cases are matters in which  ☑ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :